UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PREMIER INPATIENT PARTNERS LLC,**
as third party beneficiary of A.B.,

    Plaintiff,

v.                                                          Case No: 8:18-cv-619-T-35AAS

**AETNA HEALTH AND LIFE
INSURANCE COMPANY,**

    Defendant.

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Plaintiff's Motion to Remand, (Dkt. 11); Defendant's Response in opposition thereto, (Dkt. 20); Plaintiff's Reply to Defendant's Response, (Dkt. 44); Plaintiff's Notice of Supplemental Authority, (Dkt. 45); and Defendant's Sur-Reply.  (Dkt. 52)   Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiff's Motion to Remand.   (Dkt. 11)

### I.  BACKGROUND

On or about February 20, 2018, Plaintiff Premier Inpatient Partners, LLC (hereinafter, "Premier" or "Plaintiff") filed this breach of contract action against Defendant Aetna Health and Life Insurance Company (hereinafter, "Aetna" or "Defendant") in the Circuit Court in and for Pinellas County, Florida, Small Claims Division ("Pinellas County

Court").¹  (Dkt. 2)  Plaintiff is a health care provider of emergency care and services, licensed and operating in the State of Florida.  (Id. at 1)  Defendant is a health maintenance organization ("HMO") that directly or indirectly solicits or effects coverage of, collects charges or premiums from, or adjusts or settles claims on behalf of residents of Florida for health insurers and HMOs through a health maintenance contract.  (Id. at 2)

By way of background, Congress established a federally subsidized health insurance program, Medicare Part C, which allows beneficiaries to opt-out of traditional Medicare and choose Medicare Advantage plans offered by private companies known as Medicare Advantage Organizations (hereinafter, "MAO") such as Aetna.  See 42 U.S.C. § 1395w-21, et. seq.; 42 C.F.R. § 422.100, et. seq.  MAOs then contract with eligible patients regarding rates, costs, etc. for medical services using both in-network and out-of-network medical providers, such as Plaintiff.  The Center for Medicare and Medicaid Services (hereinafter, "CMS") then pays the MAO a fixed fee per enrollee and the MAO provides at least the same benefits as an enrollee would receive under traditional Medicare.  42 C.F.R. § 422.214(a)(1).²

---

¹ The Court notes that seven of the cases consolidated herein were filed in the Circuit Court in and for Hillsborough County, Florida, including (1) 8:18-cv-01819; (2) 8:18-cv-02018; (3) 8:18-cv-02019; (4) 8:18-cv-02021; (5) 8:18-cv-02026; (6) 8:18-cv-02027; and (7) 8:18-cv-02030 (hereinafter, "Hillsborough County Cases").  See e.g., Premier Inpatient Partners, LLC, (J.C.2.) v. Aetna Health & Life Insurance, 8:18-cv-01819-MSS-AAS, Docket No. 2.

² "[S]o long as they provide the same 'benefits' available through 'original [M]edicare,' 42 U.S.C. § 1395w-22(a)(1)(A), MAOs can design [Medicare Advantage] plans as they see fit." Ohio State Chiropractic Ass'n v. Humana Health Plan Inc., 647 F. App'x 619, 623 (6th Cir. 2016).  "Of course, MAOs are still subject to extensive regulatory requirements" however, "their autonomy to 'utilize innovations [of] the private market' in MA plan design and implementation indicates that MAOs are not closely supervised or controlled by CMS." Id. (citing H.R. Rep. No. 105–217, at 585 (1997) (Conf. Rep.)).  Moreover,

    CMS recognizes as much: Part C has no analogue to 42 C.F.R. § 421.5(b)

Beginning in December 2017, Plaintiff filed a series of cases against Defendant in small claims court, alleging that it provided medical treatment to patients, submitted claims for reimbursement of its charges for those services, and Defendant did not pay the full amount it billed.  (See e.g., Dkt. 2)  Under a third-party beneficiary theory, Plaintiff seeks to enforce the terms of a medical policy between Defendant and the patients to recoup the outstanding balance for billed services.  (Id. at ¶ 38)  Plaintiff asserts that, as an out-of-network and noncontract provider for the patients, it is entitled to "recover benefits for health care treatment regarding the above-referenced policy" for emergency care and services rendered.  (Id. at ¶¶ 1, 31)  Plaintiff alleges that Defendant breached the medical policy contract by "fail[ing] to properly pay or deny" Plaintiff's claims for services rendered to the patients in violation of Florida Statutes.  (Id. at ¶ 38)

On February 20, 2018, Plaintiff filed its original complaint (hereinafter, "Complaint") in Pinellas County Court.  (Dkt. 2)  In Count I, Plaintiff alleges that Defendant failed to pay the proper rate for health care claims in violation of Fla. Stat. § 641.513(5).  (Id. at ¶¶ 24–34)  In Count II, Plaintiff asserts that Defendant failed to make timely payments in violation of Fla. Stat. §§ 641.3155 and 627.6131.[3]  (Id. at ¶¶ 35–40)  On March 14, 2018,

---

permitting MAOs to 'act on [its] behalf.'  Cf. Zanecki v. Health All. Plan of Detroit, 577 F. App'x 394, 397-98 (6th Cir. 2014) (CMS lacks authority to manage "detailed physical performance" or control "day-to-day operations" of MAOs).

Id. at 623;  see also 42 C.F.R. § 421.5(b) (Medicare Part B "[i]ntermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of CMS and CMS is the real party of interest in any litigation involving the administration of the program.")

[3] The Court notes that in the Hillsborough County Cases, Plaintiff cites four (4) Florida Statutes in each of the initial Complaints—(i) § 641.3155(6); (ii) § 627.6131(7); (iii) § 641.513(5); and (iv) § 627.64194.  See n. 1; see also, e.g., Premier Inpatient Partners, LLC, (J.C.2.) v. Aetna Health & Life Insurance, 8:18-cv-01819-MSS-AAS, Docket No. 2.  Plaintiff also pleaded counts for "declaratory judgment" and "unjust enrichment/quantum merit" in these Complaints, in addition to the breach of contract and Florida statutory claims.  See e.g., id. at 5–10.

3

Defendant removed this matter to federal court asserting that this Court has original jurisdiction under 28 U.S.C. § 1331. (Dkt. 1) Defendant also contends that removal is proper under 28 U.S.C. § 1442(a)(1), which permits federal officers or agencies sued in state court to remove the action to federal court. (Id.)

On May 9, 2018, after this case was removed, Premier filed a motion for leave to amend the Complaint. (Dkt. 32) On July 18, 2018, the Court granted Plaintiff's Motion, allowing withdrawal of Count II of the Complaint and an amendment of Count I. (Dkt. 42) The resulting Amended Complaint alleges one count of breach of implied-in-law contract, alleging a violation of both Fla. Stat. §§ 641.513(5) and 627.64194. (Dkt. 43 at 10–11 ¶¶ 25, 31–33)

Although the Plaintiff brings claims solely under state law, Defendant argues that removal is proper under 28 U.S.C. §§ 1441 and 1442. (Dkt.1) For the reasons that follow, the Court rejects both bases for removal and finds that this case is due to be remanded to state court.

## II.  SUBJECT MATTER JURISDICTION AND REMOVAL OF STATE COURT ACTIONS

As a preliminary matter, the Court finds that the Initial Complaint is the operative document for determining whether removal was proper. The Eleventh Circuit has established that "[j]urisdiction is determined by looking to . . . the plaintiff['s] original complaint entered at the time of removal." Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011) ("The existence of federal jurisdiction is tested as of the time of removal."). Accordingly, the Court reviews the facts of this case based on the Complaint at issue at the time of removal. (Dkt. 2)

Defendant removed this action under the general federal-question removal statute, which provides, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).[4]  "To be removable under this statute, the action must be founded on a claim or right arising under federal law . . . and the action must be one of which the district court has original jurisdiction, which means that the action originally could have been filed in federal court."  Dial v. Healthspring of Ala., Inc., 541 F.3d 1044, 1047 (11th Cir. 2008) (citation and quotation marks omitted).

### A.  Federal Question Under Section 1331

Federal courts are courts of limited subject matter jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).  Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, law, or treaties of the United States."  28 U.S.C. § 1331.  Ordinarily, "to determine whether the claim arises under federal law, [the Court] examine[s] the well-pleaded allegations of the Complaint and ignore[s] potential defenses . . . ."  Scarborough v. Carotex Constr., Inc., 420 F. App'x 870, 873 (11th Cir. 2011) (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003) (citation and quotation marks omitted)).  Under the "well-pleaded-complaint" rule, the Supreme Court has stated that a "suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his

---

[4] Federal district courts also have original jurisdiction over civil actions brought in diversity in which the matters in controversy exceed the sum or value of $75,000.00, exclusive of interest and costs, and are between citizens of different States.  28 U.S.C. § 1332(a)(1).  This basis for removal is not at issue in this case.

5

own cause of action shows that it is based upon those laws or that Constitution." Id.

Preemption is an exception to the well-pleaded complaint rule.[5]  Dial, 541 F.3d at 1047.  "Complete preemption occurs when a federal statute both preempts state substantive law and 'provides the exclusive cause of action for the claim asserted.'"  Id. (quoting Beneficial Nat'l, 539 U.S. at 8).  "Complete preemption is a rare doctrine that entirely transforms a state-law claim into a federal claim, regardless of how the plaintiff framed the legal issue in his complaint."  Cmty. State Bank v. Strong, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011) (quoting Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 854–55 (11th Cir. 1999)); see also U.S. Const. art. VI, cl. 2. Congress's intent "is the ultimate touchstone" of a compete preemption analysis. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

Defendant asserts that Plaintiff's claims are preempted by the Medicare Act and "turn on substantial questions of federal law" because the Complaint disputes the amount Plaintiff was reimbursed for medical services provided to Medicare beneficiaries in a Medicare Advantage Program.[6]  (Dkt. 1 at 3; Dkt. 20 at 5)  Plaintiff argues that the Complaint expressly alleges only state-law claims and asserts that there are no issues of federal law raised on its face; therefore, no federal-question jurisdiction exists.  (Dkts. 2, 11)  Plaintiff also asserts that the "Eleventh Circuit [has] held that removal [pursuant to § 1331] was improper because federal [district] courts do not have original jurisdiction of

---

[5] Defendant does not appear to argue removal under the well-pleaded complaint rule in the Notice of Removal. (Dkt.1)  In fact, the Parties appear to agree that the face of Plaintiff's Complaint does not assert any federal claims.  Instead, Defendant asserts that Plaintiff's claims are subject to § 1441 removal based on the preemption exception to the well-pleaded complaint rule.  (Id.)

[6] The Medicare Act contains a broad preemption clause providing that "the standards established in connection with the Medicare Advantage Program 'shall supersede any state law or regulation.'"  (Dkt. 1 at 11–12); see also 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.402.

6

claims arising under the Medicare Act." (Dkt. 11 at 5); Dial, 541 F.3d at 1047–48. Defendant contends that the Medicare Act expressly preempts state substantive law and provides the exclusive remedy for the allegations in the Complaint.[7] (Dkt. 1 at 11–12); 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.402. In essence, Defendant argues that the preemption exception to the well-pleaded complaint rule applies to Plaintiff's claims because "a federal statute wholly displaces the state-law cause[s] of action through complete pre-emption." Beneficial Nat'l, 539 U.S. at 9.

The Eleventh Circuit addressed § 1441 removal on the basis of complete preemption and § 1331 subject matter jurisdiction under the Medicare Act in Dial. The Dial court interpreted and addressed the congressional intent of the Medicare Act provisions, specifically 42 U.S.C. §§ 1395w–22, 1395w–26, and 405. Dial, 541 F.3d at 1047. The defendant in Dial relied on the same federal question argument asserted by Defendant as the basis for removal in contending that the "Medicare Act expressly preempts state substantive law [under] 42 U.S.C. § 1395w–26, and provides the exclusive remedy for at least some of the allegations in the complaint, *see* 42 U.S.C. § 1395w–22(g)(5)." Id. Ultimately, the Dial Court reversed the Alabama district court decision which had denied the Plaintiffs' motion for remand outright. Id. Specifically, the Dial court "remand[ed] [the case] to the district court with instructions to remand the case to the state court from which it was removed." Id. The Eleventh Circuit reasoned that "the

---

[7] Defendant also contends that the standards established by the CMS for Medicare Advantage Plans subject Plaintiff's claims to an "administrative exhaustion requirement" which Plaintiff failed to undertake. (Dkt. 20 at 5) This argument, however, does not appear to be jurisdictional in nature or relevant to the removal analysis, and instead would be preserved as a possible argument for dismissal to be raised in the court with jurisdiction over the matter. As such, this Court cannot consider such argument at this time because this Court's jurisdiction has not been properly invoked.

7

only source of federal law that [defendant] invoke[d] in support of removal is the Medicare Act, which 'strips federal courts of primary federal-question subject matter jurisdiction' over claims that arise under that Act." Id. (quoting Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 779 (11th Cir.2002) (citing 42 U.S.C. § 405(h)). The Court further explained that:

> In place of that primary federal-question jurisdiction, the [Medicare] Act provides for an administrative hearing before the Secretary of the Department of Health and Human Services. 42 U.S.C. § 1395w–22(g)(5). If the amount in controversy is sufficient, the Act provides for "judicial review of the Secretary's final decision" in the form of a civil action in federal district court against the Secretary. *Id.*; 42 U.S.C. § 405(g). This procedure for judicial review of the administrative decision of the Secretary "to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984). Because the plaintiffs' action is not a "civil action of which the district courts have original jurisdiction," the action is not removable. 28 U.S.C. § 1441(b); [*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).] We need not decide whether the complaint against Healthspring arises under the Medicare Act because the district court lacks removal jurisdiction in any event.

Dial, 541 F.3d at 1047–48.

Defendant fails to cite any binding case authority to support its contention that federal courts have original federal-question jurisdiction over claims arising under the Medicare Act. (Dkts. 1, 20, 52) Consequently, in the absence of any other binding authority, the Court applies the Dial holding and analysis to the instant matter. Indeed, the plain language of 42 U.S.C. §§ 1395w–22, 1395w–26 and 405 addressed by the Dial court evinces Congress's intent that the federal courts would not have original federal-question jurisdiction over all claims arising under the Medicare Act. See 42 U.S.C. § 1395w–22(g)(5); 42 U.S.C. § 405(g–h). Thus, even assuming "that at least one of [Plaintiff's] claims for relief arises under the Medicare Act, the district court would lack

8

subject-matter jurisdiction over [the] complaint because it is not against the Secretary of the Department of Health and Human Services for review of an administrative decision." Dial, 541 F.3d at 1047–48. Accordingly, removal under § 1441 is improper.

### B. Federal Officer Removal Under Section 1442(a)(1)

Alternatively, Defendant contends that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Aetna "has a Medicare contract with CMS to offer and administer Medicare Advantage plans for Medicare eligible individuals, including [for] the patient[s] at issue in this case."  (Dkt. 1 at 5)  Defendant further contends that it "is authorized to act as a federal officer in affirmatively executing these duties under federal law."  (Id. at 6)

Defendant's reliance on federal officer removal is misplaced. The federal officer removal statute permits removal of any action against

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension and punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a)(1). A private party, such as Defendant, seeking to remove under the federal officer removal statute must satisfy four criteria: (i) it must be a person; (ii) it must be "acting under" a federal officer or agency; (iii) it must be sued for actions "under color of such office;" and (iv) it must have a colorable federal defense. 28 U.S.C. § 1442(a)(1); see also Caver v. Central Alabama Electric Cooperative, 845 F.3d 1135, 1142 (11th Cir. 2017).

9

Federal officer removal is also an exception to the well-pleaded complaint rule. Caver, 845 F.3d at 1145. Thus, Courts have required that a defendant seeking removal under section 1442(a)(1) demonstrate that its conduct was "performed pursuant to the direct and detailed control of an officer of the United States." Kennedy v. Health Options, Inc., 329 F. Supp. 2d 1314, 1318 (S.D. Fla. 2004) (citing Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)). As the court in Green v. Aetna U.S. Healthcare, Inc. explained,

> [a] person is acting under a federal officer if a nexus is established between the actions of the federal officer and the actions for which the defendant is being sued. That nexus is established by the federal officer's direct and detailed control over the defendant. If a corporation only establishes that the acts occurred under the general auspices of federal direction, however, then it is not entitled to § 1442(a)(1) removal.

No. C 00 1292 VRW, 2000 WL1229226, * 2 (N.D. Cal. Aug. 18, 2000). Merely "[a]sserting that a defendant's conduct is performed at the general direction of a federal agency does not rise to the level of removal based on 28 U.S.C. § 1442(a)(1)." Kennedy, 329 F. Supp. 2d at 1318 (citing Good, 914 F. Supp. at 1128).

There is no dispute that, as a corporation, Aetna is a "person" for purposes of considering the first criterion under federal officer removal jurisdiction. (Dkts. 11, 44, 45); see also 1 U.S.C. § 1 (defining "the word [] 'person'. . . [to] include corporations"). Defendant cannot demonstrate, however, that it acted under a federal officer or agency or performed the actions for which it is being sued under color of any federal office.

In Watson v. Phillip Morris Cos., 551 U.S. 142, 145 (2007), the Supreme Court held that a plaintiff does not act under the authority of a federal officer pursuant to § 1442(a)(1) even when "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." Although Watson instructs that §

10

1442(a)(1)'s "acting under" language is "broad, and the statute must be liberally construed," this "broad language is not limitless." Id. at 147. For example, in the context of historical and precedential evolution, the word "under" refers to what "has been described as a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office." Id. at 151 (quotation marks omitted). Additionally, the relationship necessitates a finding of subjection, guidance, or control. Id. Furthermore, Watson teaches that merely complying with the law does not satisfy the "acting under" provision, and a private person, such as Defendant, "acting under" a federal officer or agency must demonstrate its effort to assist, or to help carry out, the duties or tasks of a federal superior. Id.; see also Caver, 845 F.3d at 1144 (Defendant, "a [rural electric cooperative and] non-profit entity funded in part by federal loans," properly removed under federal officer jurisdiction because of the "significant level of control" and extensive involvement the government agency maintained over the Defendant entity's functions and operations as "instrumentalities of the United States.").

While the Eleventh Circuit has not yet determined whether an MAO, such as Defendant, is "acting under" a federal officer or agency, the Sixth Circuit has offered instructive guidance. See Ohio State Chiropractic v. Humana Health Plans, 647 Fed. App'x 619 (6th Cir. 2016). In Ohio State Chiropractic, the Sixth Circuit found that the defendant, Humana, a Medicare Advantage Organization, was *not* acting under the direction of CMS and thus, remanded the case to state court. Id. at 621. The Sixth Circuit held that the relationship between the governmental agency in question and an MAO was not so unusually close that Humana could successfully invoke the officer removal statute. Id. at 622–23. Central to its holding, the Sixth Circuit explained that

11

MAOs have an arms-length relationship with CMS. Specifically, the Ohio State Chiropractic panel explained that:

> MAOs have free rein to decide: the network of providers with whom they contract, *42 C.F.R. § 422.4*; the benefits to provide enrollees beyond traditional Medicare, *42 C.F.R. § 422.102(b)*; the out-of-pocket costs that they charge enrollees, *42 C.F.R. § 422.111(f)(5)*; and the care that enrollees can obtain from out-of-network providers, *42 C.F.R. § 422.111(f)(5)*. MAOs do not regularly update CMS on their enrollees' claims and benefits. *42 C.F.R. § 422.310*. In fact, they are required to attempt to resolve benefits disputes before MA plan enrollees resort to administrative review. *42 C.F.R. § 422.562*. In short, MAOs have an arms-length relationship with CMS.

Id. The Sixth Circuit further elaborated that the autonomy of MAOs to use innovations within the private market is not closely supervised or controlled by CMS. Id. Applying Ohio State Chiropractic, the Court concludes that Defendant is not properly categorized as "acting under" a federal officer or agency.

The Court notes that in reaching this decision, it has considered several cases cited by the Defendant that reach a different conclusion. For example, in Body & Mind Acupuncture v. Humana Health Plan, Inc., No. 1:16CV211, 2017 WL 653270, at *4 (N.D.W. Va. Feb. 16, 2017), the district court recognized the split of authority regarding whether companies like Aetna may remove cases naming them as Defendant to federal court under the federal officer removal statute. Id. at 5. The West Virginia court declined to follow Ohio State Chiropractic and instead broadly construed Watson's "acting under" language, finding that the MAO properly removed under § 1442(a)(1). Id. The Court has also considered the Southern District court's analysis in Associates Rehabilitation Recovery, Inc. v. Humana Medical Plan, Inc., 76 F.Supp.3d 1388, 1391 (S.D. Fla. 2014). In that case, the court found that the MAO was "acting under" the direction of a federal officer because it "contracted with CMS to administer Medicare benefits on behalf of the federal government for Medicare enrollees in the Medicare

12

Advantage plans" offered by the MAO. Id. The court cited the fact that the MAO operated pursuant to a contract and under extensive CMS regulations.[8] Id.

This Court, however, finds the reasoning of Ohio State Chiropractic more persuasive and finds that Watson instructs that the regulatory scheme at issue here is insufficient to satisfy the removal statute. Watson, 551 U.S. at 145; accord Kindred Hosps. E., LLC, et al v. Wellcare of Fla., et al, No.8:17-cv-00864-EAK-AEP (M.D. Fla. February 2, 2018) (concluding that the defendant, a private company that is also a Medicare Advantage Organization, does not "act under" the control of a federal officer for purposes of satisfying the federal officer removal statute codified at 28 U.S.C. § 1442(a)(1)); Kennedy, 329 F. Supp. 2d at 1318 ("While there are federal regulations involved in providing Medicare benefits, the presence of federal regulations does not satisfy the requirements to assert federal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).").

In sum, the Court finds that Defendant has not satisfied the criteria for removal under § 1442(a)(1). Upon consideration of Watson, which post-dates many of the cases relied on by Defendant, and the Ohio State Chiropractic case, which the Court finds to be well-reasoned, the Court finds that the Defendant has failed to demonstrate that it was "acting under" the control of a federal officer; thus, removal under section 1442(a)(1) is improper.

---

[8] Notably, the only authority cited in Assocs. Rehab. is McMahon v. Presidential Airways, 410 F. Supp. 2d 1189, 1196 (M.D. Fla. 2006) (internal quotation marks omitted), a 2006 district court case that preceded Watson's instructive guidance.

## III. CONCLUSION

Accordingly, because Defendant has failed to establish that removal of this action is proper under federal-question jurisdiction or under the federal officer removal statute, this Court lacks subject matter jurisdiction to proceed in this case.

It is, therefore, **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand, (Dkt. 11), is **GRANTED**.

2. The Clerk is **DIRECTED** to **REMAND** the following cases consolidated herein to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida:

   a. <u>Premier Inpatient Partners, LLC, (A.B.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00619-MSS-AAS;

   b. <u>Premier Inpatient Partners, LLC, (K.L) v. Aetna Health & Life Insurance</u>, 8:18-cv-00620-MSS-AAS;

   c. <u>Premier Inpatient Partners, LLC, (M.K) v. Aetna Health & Life Insurance</u>, 8:18-cv-00666-MSS-AAS;

   d. <u>Premier Inpatient Partners, LLC, (F.L) v. Aetna Health & Life Insurance</u>, 8:18-cv-00797-MSS-AAS;

   e. <u>Premier Inpatient Partners, LLC, (C.F.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00799-MSS-AAS;

   f. <u>Premier Inpatient Partners, LLC, (J.C.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00800-MSS-AAS; and

   g. <u>Premier Inpatient Partners, LLC, (M.E.) v. Aetna Health & Life Insurance</u>, 8:18-cv-00802-MSS-AAS.

3. The Clerk is **DIRECTED** to **REMAND** the following cases consolidated herein to the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida:

   a. <u>Premier Inpatient Partners, LLC, (G.D.) v. Aetna Health & Life Insurance</u>, 8:18-cv-01819-MSS-AAS;

   b. <u>Premier Inpatient Partners, LLC, (J.C.2.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02018-MSS-AAS;

   c. <u>Premier Inpatient Partners, LLC, (S.T.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02019-MSS-AAS;

   d. <u>Premier Inpatient Partners, LLC, (J.C.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02021-MSS-AAS;

   e. <u>Premier Inpatient Partners, LLC, (P.G.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02026-MSS-AAS;

   f. <u>Premier Inpatient Partners, LLC, (D.C.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02027-MSS-AAS; and

   g. <u>Premier Inpatient Partners, LLC, (E.Z.) v. Aetna Health & Life Insurance</u>, 8:18-cv-02030-MSS-AAS.

4. Thereafter, the Clerk is **DIRECTED** to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of February, 2019.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person